IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL M. WILSON,                    )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )     CASE NO. 2:21-cv-354-MHT-JTA
                                     )
MONICA MCCOY, et al.,                )
                                     )
          Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.     INTRODUCTION

Plaintiff Daniel Wilson, proceeding *pro se* and *in forma pauperis,* filed this action

under 42 U.S.C. § 1983 during his incarceration at the Easterling Correctional Facility.[1]

*See* Doc. No. 1.[2] The Complaint names as defendants Warden Monica McCoy,

Correctional Officers Kenneth Brooks and Bryan Gavins, and Stewards Marilyn Horsley,

Shamika Pickett, and Darius Woods. *Id.* at 2. Wilson seeks $900,000 in damages for

Defendants' alleged failure to provide him with constitutionally adequate conditions of

---

[1]  Wilson was released from custody of the Alabama Department of Corrections during the
pendency of this action. *See* Doc. No. 43.

[2]  All documents and attendant page numbers cited herein are those assigned by the Clerk of this
Court in the docketing process.

confinement. Wilson also requests his release from prison and that Easterling be closed.[3]
*Id.* at 4.

Defendants filed an Answer, Special Report, and supporting evidentiary material
addressing Wilson's claims for relief. Doc. No. 39.  In their report, Defendants deny they
acted in violation of Wilson's constitutional rights. After reviewing the Special Report, the
Court issued an Order on January 24, 2022, requiring Wilson to respond to the report with
affidavits or statements made under penalty of perjury and other evidentiary materials.
Doc. No. 41 at 2.  The Order specifically cautioned that the "Court may at any time [after
expiration of the time for Wilson to file a response] and without further notice to the parties
(1) treat the [Special] Report and any supporting evidentiary materials as a … motion for

---

[3] A § 1983 action does not provide a remedy for a state prisoner asserting a constitutional challenge
to the fact or duration of his detention. *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). Thus,
even if Wilson had not been released from prison, his request for relief seeking "my freedom"
(Doc. No. 1 at 4), must be addressed in an application for habeas corpus relief. *Id*. at 500.  Further,
to the extent Wilson seeks prospective injunctive relief by requesting that Easterling be closed,
this relief is also unavailing. The Eleventh Circuit has explained that "because injunctions regulate
future conduct, a party has standing to seek injunctive relief only if the party alleges … a real and
immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Wooden
v. Bd. of Regents of Univ. Sys. of Georgia.*, 247 F.3d 1262, 1283 (11th Cir. 2001) (holding that
"[t]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood
that he will be affected by the allegedly unlawful conduct in the future."). "Past exposure to illegal
conduct does not in itself show a present case or controversy regarding injunctive relief ... if
unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488,
495–496 (1974). Rather, "[t]he general rule is that a prisoner's transfer or release from a jail moots
his individual claim for declaratory and injunctive relief," even when "there is no assurance that
he will not be returned to the jail." *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir.
1984) (holding that an inmate's claim was moot where he challenged "unconstitutional conditions
in a single jail where [he] is no longer incarcerated"). Because Wilson is no longer incarcerated,
he cannot allege a real and immediate threat of future injury regarding the challenged conditions
at Easterling and his request for equitable relief is moot. *See Wahl v. McIver*, 773 F.2d 1169, 1173
(11 Cir. 1985) (explaining that "[a]bsent class certification, an inmate's claim for injunctive and
declaratory relief in a section 1983 action fails to present a case or controversy once the inmate
has been [released].").

summary judgment …, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." *Id.* at pgs. 2–3. Pursuant to the January 24, 2022, Order, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes the motion is due to be granted.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … .  [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact. *Id*. at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Summary judgment also should be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In determining whether a genuine dispute of material fact exists, the Court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). "At the summary judgment stage, this Court should accept as true "statements in [plaintiff's] verified complaint, [any] sworn response to the [defendant's] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *see also United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (quotation marks and citation omitted) (observing that "[t]o be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6

(11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## III.   BACKGROUND

Wilson sues Defendants for their alleged deliberate indifference to his health, safety, and well-being. Specifically, Wilson asserts that he almost choked on a foreign object in his food on May 4, 2021, oversight of food preparations by the kitchen stewards is poor, food service to inmates in the restrictive housing unit ("RHU") is unsanitary and unsafe because it is served by other inmates, and the water is "very bad."[4] Doc. No. 1 at 3; *see also* Doc. No. 1-1 at 2. Wilson also complains of limited time in the library, missed deadlines because of staff laziness and a failure to promptly handle and distribute mail, and the unavailability of a notary for inmates in the RHU. Doc. No. 1-1 at 1. Defendants contend, *inter alia*, that Wilson's claims lack merit, Defendants did not violate Wilson's constitutional rights, and Defendants are entitled to immunity in their official and individual capacities. *See* Doc. No. 39 at 3–4, 7–15, 17–18.

---

[4] Defendants interpret Wilson's allegation regarding the "bad water" in his Complaint as a temperature issue. *See* Doc. No. 1 at 3; Doc. No. 39 at 3. Whether Wilson's claim regarding the condition of the water at Easterling is based on the temperature, color, age of the pipes, or some other quality issue, his conclusory allegation about "bad water" is insufficient to demonstrate an Eighth Amendment violation for the reasons explained in the Recommendation.

Defendants' evidentiary submissions include Defendants' affidavits and the Alabama Department of Corrections' Administrative Regulation ("AR") governing food service administration. According to AR 701, ¶ III (4) (A–E), Sanitation and Maintenance:

A.  The ADOC Food Service Equipment Preventative Maintenance Manual contains clear, concise instructions for the operation and cleaning of the physical plant, equipment and utensils. All food service/maintenance personnel will become thoroughly familiar with reference document.

B.  The Chief Steward will prepare and document a schedule for regular periodic cleaning of the physical plant, equipment and utensils.

C.  The Chief Steward, or his representative, will conduct a weekly inspection of all food service areas including dining/food service areas, and equipment. Results will be documented in the steward's log. On a daily basis, refrigeration, water, and other critical control point temperatures will be checked and logged accordingly by on-duty food service personnel.

D.  Food Service will prepare a schedule of periodic preventive maintenance of the physical plant and equipment, developed in conjunction with maintenance personnel. The preventive maintenance program shall include as a minimum: inspection, lubrication, replacement of parts as necessary and any recommendations for extended equipment life as suggested by manufacturers' instructions.

E.  Food Service personnel shall meet standards set in the Rules of Alabama State Board of Health, Environmental and Facility Standards Administration, Chapter 420-3-22 for Food Service Standardizations. All inmate personnel assigned will meet the same standards cited above and will be checked by the duty steward prior to the start of each shift.

Under ¶ III (5) (A-B), Security:

A.  The Chief Steward shall assist security personnel in scheduling supervision of inmates during meal hours. Although direct supervision by staff members is required, regimentation should be minimal.

B.     Supervisory personnel are responsible for assuring that inmates working on the serving line show no favoritism to other inmates concerning portion control and are neat and clean in serving.

In response to Wilson's claim about finding, for a second time, a foreign object in his food and that he "wrote [Warden] McCoy … a grievance [about it and] when she came by my door she looked crazy at me and walked off like she did not care," Warden McCoy denies the statement as false and without merit. Doc. No. 39-1 at 1. Warden McCoy affirms that Wilson made verbal and written reports about previously finding a spider in his Jell-o and, as alleged in this matter, finding a razor in his field peas, but after discussing the matter in detail with Wilson, prison officials could not confirm or find merit in his claims. *Id.* at 1–2. Warden McCoy further states the kitchen and RHU staff were informed of Wilson's complaint and coached about protocols for RHU meal service. *Id.* at 2. Defendant McCoy also denies Wilson's claim that she has harassed or ignored him, was the only prison official who denied his evaluations for a custody change, abused her authority when dealing with him, and did not care if he was sick. *Id.* at 1.

Officers Gavins and Brooks deny any knowledge of foreign objects in Wilson's meal trays, including his claim of finding a razor in his food. Doc. No. 39-2 at 1; Doc. No. 39-3 at 1. These officers further state meals are completed professionally and in compliance with health department standards. *Id.*

Kitchen Stewards, Pickett, Horsley, and Woods, deny Wilson's claims about unsanitary food service and foreign objects in his food as being unsubstantiated, without merit, and untrue. Docs. No. 39-4, 39-5, 39-6. Steward Pickett testifies that all meals are prepared and served to inmates and staff in accordance with AR 701 (*see* Doc. No. 39-4 at

3–15) and affirms the kitchen at Easterling is clean and orderly as required by AR 701. Doc. No. 39-4 at 1–2. Additionally, Steward Pickett states she is ServSafe certified and ensures adherence to food safety in Easterling's kitchen. *Id.* at 2. Steward Horsley testifies that inmates are closely monitored during food preparation. Doc. No. 39-5 at 1. She states she is without knowledge regarding Wilson's claim of finding foreign objects in his food. *Id.* Finally, former kitchen Steward Woods testifies that during the time he worked in Easterling's kitchen it was clean and orderly and managed in compliance with AR 701. Doc. No. 39-6 at 2; *see also* Doc. No. 39-6 at 3–15. Steward Woods was also a certified ServSafe steward and states he ensured the practice of food safety in Easterling's kitchen. Doc. No. 39-6 at 2.

## IV.   DISCUSSION[5]

---

[5] Wilson signed his Complaint under penalty of perjury. Doc. No. 1 at 4. Therefore, the Court will treat the Complaint as evidence when ruling on the motion for summary judgment. *See Sears*, 922 F.3d at 1206. Wilson attached to his Complaint affidavits from inmates Cartwright (Doc. No. 1-3) and Fortner (Doc. No. 1-4) along with his own affidavit (Doc. No. 1-5). These affidavits are not properly sworn before a notary and all notary portions are blank. *Id.* The affiants write in their statements: "I solemnly swore [] to tell the truth" (Doc. No. 1-3 at 1), "my testimony is true to my best ability and ask the courts to except [sic] this statement as true" and "please except this as truthfully spoken" (Doc. No. 1-4 at 2), and "my testimony is true" (Doc. No. 1-5 at 2). In *Roy v. Ivy*, 53 F.4th 1338, 1350 (11th Cir. 2022), a pro se prisoner presented an unsworn statement labeled as an affidavit in opposition to the defendants' motion for summary judgment. *Id.* at 1343, 1350. The Eleventh Circuit held that for the statement to be considered on summary judgment, it must meet the statutory requirements of 28 U.S.C. § 1746, i.e., the declarant must, at a minimum (1) date and sign the document, (2) state that its contents are true, and (3) place himself under penalty of perjury. *Id.* at 1348, 1350. Because the statement in *Roy* lacked any penalty of perjury language, it could not be considered on summary judgment. *Id.* at 1350 (adopting reasoning in *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-1306 (5th Cir. 1988)). Excusing this omission would allow a plaintiff "'to circumvent the penalties for perjury in signing onto intentional falsehoods.'" *Roy*, 53 F.4th at 1350 (quoting *Nissho-Iwai American Corp.*, 845 F.2d at 1306). Here, as in *Roy*, the witness affidavits are unsworn statements that lack any penalty of perjury language, and therefore cannot be considered by the Court as evidence in ruling on Defendants' dispositive motion. *Roy*, 53 F.4th at 1348, 1350; *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in

A.     **Sovereign Immunity**

Defendants assert that Wilson's Complaint is barred by Eleventh Amendment immunity to the extent it seeks to recover monetary damages against them in their official capacities.  Doc.  No. 39 at 17. Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, a state employee may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996).

As for the claims now being asserted by Wilson, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, Defendants

---

deciding summary judgment). Moreover, review of the affidavits reflects they were executed prior to the date of the incident to which they attest. *See* Docs. No. 1-3 at 1, 1-4 at 2, 1-5 at 2. Even if the execution dates on the affidavits could be attributed to a scrivener's error, for the reasons explained, the affidavits may not be considered on summary judgment. Similarly, Wilson's opposition to Defendants' dispositive motion (Doc. No. 42) is not properly sworn or notarized and will not be considered by the Court as evidence in ruling on Defendants' dispositive motion. *Roy*, 53 F.4th at 1350; *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), *as amended* (Sept. 29, 2003) (explaining that unsworn statement is insufficient to raise a fact issue precluding summary judgment).

Notably, Wilson was advised by the court to respond to Defendants' dispositive motion by "filing affidavits, sworn or verified declarations or *statements made under penalty of perjury*, or other evidentiary materials developed through discovery (or other appropriate means) that set forth specific facts demonstrating a genuine dispute of material fact for trial." (Doc. No. 41 at 2 (emphasis added).) He failed to follow the advisement. (*See* Doc. No. 42.)

are entitled to sovereign immunity as to all claims seeking monetary damages against them in their official capacities. *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277  (11th Cir. 1998) (holding that state officials in their official capacities are protected under the Eleventh Amendment from suits for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B.    Qualified Immunity

To the extent Wilson sues Defendants in their individual capacities, they argue they are entitled to qualified immunity. Doc. No. 39 at 17–18. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if the underlying conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation and internal quotation marks omitted).

To receive qualified immunity, a defendant first must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were

acting within the course and scope of their discretionary authority when the challenged conduct occurred. The burden therefore shifts to Wilson to present evidence that Defendants are not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

For an official to lose qualified immunity, Wilson must show both that the defendant committed a constitutional violation and that the constitutional right the defendant violated was "clearly established." *Brown v. City of Huntsville, Ala*., 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted); *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ... In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original); *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311-12 (11th Cir. 2019). The Court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

## C.    Supervisory Claim

If Wilson seeks to impose liability on a defendant for the actions or omissions of a subordinate based on a theory of respondeat superior, he is entitled to no relief. Supervisory officials cannot be held vicariously liable in § 1983 actions. *See, e.g., Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability] … A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citations, and parentheses omitted); *see also Cottone*, 326 F.3d at 1360 (quotation marks and citation omitted) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability").

Liability could attach to a supervisory official only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Here, Wilson fails to allege that any defendant in a supervisory role, participated or had direct involvement in the alleged violations of his constitutional rights regarding the challenged conditions at Easterling. To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [a defendant] on notice of the need to correct the alleged deprivation, and [she/he] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal quotation marks and citations omitted).

After careful review of the pleadings and evidentiary materials, the Court finds that Wilson fails to present any such evidence. Thus, Defendants are entitled to qualified immunity on claims against them  based on a theory of respondeat superior or vicarious liability and their motion for summary judgment is due to be granted.

### D.    Conditions of Confinement – Food Service and Sanitation

Wilson's challenges regarding the condition of food service and sanitation in the RHU at Easterling implicate the Eighth Amendment. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (stating that *pro se* filings should be liberally construed); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (holding that "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments they suggest."). The Eighth Amendment, applicable to the states through the Fourteenth Amendment, proscribes the "unnecessary and wanton infliction of pain" because of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII;  *see  Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It "proscribes more than physically barbarous punishments" and "embodies" the "concepts of dignity, civilized standards, humanity, and decency ...." *Id.* at 103 (quotation marks and citations omitted). Under the Eighth Amendment a state may not subject inmates to conditions that "deprive [them] of the minimal civilized measure of life's necessities," or that may do so. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Helling v. McKinney*,

509 U.S. 25, 33–34 (1993). A state violates the Eighth Amendment if it deprives prisoners of "basic human needs," including "reasonable safety," *Helling*, 509 U.S. at 33, and "reasonably adequate food, clothing, shelter, and sanitation." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985). The Constitution "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. *Id.* at 834. As for the objective component,  an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001). As to the subjective component,

> the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."

*Farmer*, 511 U.S. at 837-838; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. ... It is obduracy and wantonness, not inadvertence or error in good faith, which characterize the conduct prohibited by the Cruel

14

and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Merely negligent failure to protect an inmate ... does not justify liability under section 1983[.]" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990); *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

Wilson complains that on May 4, 2021, while housed in the RHU, he almost choked on a "piece of razor" in his food and that he chipped a tooth from biting down on the object. Doc. No. 1 at 3. This was the second time Wilson found a foreign object in his food.[6] *Id.* When he reported the incident to Warden McCoy and Officers Brooks and Gavins, Wilson maintains they did not take him to the healthcare unit for assessment and essentially displayed an uncaring and apathetic attitude about the incident.[7] *Id.* Wilson also complains that the kitchen stewards do not properly oversee food service for meals served to inmates housed in the RHU because it is delivered by other prisoners making it unsanitary because "there is no telling what [they] put in our food." *Id.* Finally, as noted, Wilson claims the water at Easterling is "bad." *Id.* Attached to Wilson's Complaint is a copy of a grievance,

---

[6] In the previous incident, Wilson states he found a spider in his Jell-o but does not indicate where or when that occurred. Doc. No. 1 at 3.

[7] In the event Wilson asserts claims based on a fear of conditions or actions which could have, but did not occur ("what if I had died," being given food "that could kill me" – Doc. No. 1 at 3), such assertions do not warrant constitutional protection. Mere speculative allegations that conditions could subsequently result in constitutional violations fail to implicate a constitutionally protected interest. *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (observing that a plaintiff's subjective belief harm may occur provides no basis for relief); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (holding that jurisdiction cannot be premised upon mere speculation).

dated May 4, 2021, provided to Warden McCoy and Warden John Crow wherein he described the matters presented in his Complaint. Doc. No. 1-2 at 1–2.

The Constitution requires that prisoners be provided 'reasonably adequate food.'" *Hamm*, 774 F.2d at 1575 (citation and quotation marks omitted). A well-balanced meal of enough nutritional value to preserve health satisfies this requirement. *Id*. "The fact that [prison] food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id*. (citation and quotation marks omitted); *see also Balcar v. Smith*, No. 17-5159, 2017 WL 3613479, at *2 (6th Cir. July 17, 2017) (holding that isolated exposure to foreign bodies in food, including those of rodents and insects, does not constitute an Eighth Amendment violation); *Price v. Milmar Food Grp., LLC,* No. 17-13011, 2018 WL 4346688, at *1 (E.D. Mich. July 16, 2018), *report and recommendation adopted*, No. 17-CV-13011, 2018 WL 4333976 (E.D. Mich. Sept. 11, 2018), *adhered to on reconsideration*, No. 17-CV-13011, 2019 WL 1147086 (E.D. Mich. March 13, 2019) (inmate's allegation of biting a rock or stone in his food and resulting in damage to his tooth insufficient to state a violation of the Eighth Amendment); *Edwards v. Aramark Corr. Servs*., No. 3:09CV–P160–S, 2009 WL 1360243, *2 (W.D. Ky. May 13, 2009) (dismissing plaintiff's Section 1983 claim against Aramark where "[p]laintiff alleges one incident in which he consumed a piece of gravel in his meal. He does not allege that his prison diet is consistently nutritionally inadequate or that his food regularly or even often contains gravel.").

The conditions or problems identified by Wilson are unfortunately problems of prison life in general, a life which while not comfortable, must be humane. *Mathews v.*

*Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007).  Here Wilson has not shown that that the challenged conditions about food safety, service, and sanitation caused him serious injury nor can the problems he describes be considered "abuses."  Thus, without more, Wilson's claims  do not satisfy the objective component of an Eighth Amendment claim. *See George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) (explaining that a plaintiff seeing "some particles of food on his plate at dinner ... does not come within shouting distance of a constitutional grievance"); *Kilgore v. Thompson*, No. 5:14-CV-292-DCR-REW, 2015 WL 13273315, at *6 (E.D. Ky. Oct. 13, 2015), *report and recommendation adopted*, No. CV 5: 14-292-DCR, 2015 WL 6675552 (E.D. Ky. Nov. 2, 2015) (finding that "occasional or episodic incidents of contaminated food or unclean food areas are not constitutional violations); *Bennett v. Misner*, No. CIV. 02-1662-HA, 2004 WL 2091473 at *20 (D. Or. 2004), *aff'd*, 180 F. App'x 732 (9th Cir. 2006) (finding that "[n]either isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation").

Even if Wilson could establish the objective component of his claim, he fails to demonstrate deliberate indifference or reckless disregard by the named defendants regarding his health or safety. The question is not whether Wilson's complaints were addressed to his satisfaction but whether Defendants failed to act or that they acted in a deliberately indifferent manner. Warden McCoy's uncontested testimony about the actions taken in response to Wilson's written and verbal grievances—which involved investigating and discussing the matter of an object in Wilson's food in detail with him,  informing the

kitchen and RHU staff about Wilson's complaints, and counseling staff about protocols for RHU meal service (Doc. No. 39-1 at 1–2)—are fatal to Wilson's deliberate indifference claim. Also fatal to Wilson's conditions claim is his own evidence which indicates that after he expressed to Officers Gavins and Brooks his concerns about  finding a foreign object in his food, they advised him to stop eating and offered to bring him another food tray. Doc. No. 1 at 3. Wilson has produced no evidence which shows any other named defendant knew of a risk of serious harm to him regarding the conditions about which he complains and disregarded that risk. *Farmer*, 511 U.S. at 837-38. The mere fact the challenged conditions existed is not enough.

Although Wilson presents claims regarding food safety, service, and sanitation at Easterling's RHU, he has not presented any evidence that the challenged conditions were so extreme that they denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir. 2004); *Wilson*, 501 U.S. at 298-99; *Rhodes*, 452 U.S. at 347; *Alfred v. Bryant*, 378 F. App'x. 977, 980 (11th Cir. 2010 (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)) ("'Inmates cannot expect the amenities, conveniences and services of a good hotel.'"). Even if Wilson established an "excessive risk to inmate health or safety," liability cannot be imposed "solely because of the presence of objectively inhumane prison conditions." *Farmer*, 511 U.S. at 838. In this case, Wilson has presented no facts or evidence indicating Defendants subjectively knew of a substantial risk of harm to his health or safety regarding the challenged conditions and disregarded this risk to establish deliberate indifference. *Chandler*, 379 F.3d 1289-90. Defendants are therefore

entitled to qualified immunity in their individual capacities on Wilson's Eighth Amendment conditions claim, and their motion for summary judgment is due to be granted.

### E.    Access to Courts

In the event Wilson's Complaint is considered to allege a First Amendment access to courts claim by challenging his ability to access the law library, the availability of a notary, and staff's failure to handle legal mail promptly and properly (*see* Doc. No. 1-1 at 1), this claim entitles him to no relief. Wilson's Complaint asserts no allegations or facts, nor identifies any specific acts or omissions, by any defendant regarding his access to courts challenge.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Cottone*, 326 F.3d at 1360; *Swint v. City of Wadley, Ala*., 51 F.3d 988, 999 (11th Cir. 1995). The law of this Circuit directs "that the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982); *Iqbal,* 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."). If Wilson seeks to impose liability on a defendant for the conduct of subordinate officials or employees, as explained, supervisory staff cannot be held vicariously liable under § 1983. *See id.*; *Cottone*, 326 F.3d at 1360.

Here, Wilson's access to courts claim fails to allege that any named defendant was personally involved in the alleged constitutional violations about which he complains or

that a sufficient causal connection exists between their actions and the alleged deprivations. Defendants are therefore entitled to qualified immunity in their individual capacities on Wilson's First Amendment claim and their motion for summary judgment is due to be granted.[8]

## V.   CONCLUSION

For these reasons, the Magistrate Judge RECOMMENDS as follows:

---

[8] Even if Wilson had implicated any of the named defendants in his access to courts claim, he would not be entitled to relief. To establish a First Amendment access-to-courts claim, a prisoner must show that "an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Lewis v. Casey*, 518 U.S. 343, 356 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). "The fundamental right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate legal assistance from persons trained in the law." *Bounds*, 430 U.S. at 838. However, the prisoner's contentions of deprivation of access to the courts must show actual prejudice or harm as a "constitutional prerequisite." *Lewis*, 518 U.S. at 351; *see also Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991) (explaining that "both policy and the prevailing state of the law require an inmate to articulate facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action"). Further, the right of access to the courts does not extend to all legal claims, only to those in which an inmate can demonstrate actual injury from an inability to challenge specific non-frivolous legal claims relating to the fact or condition of a prisoner's confinement. *Lewis*, 518 U.S. at 355; *see also Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). Wilson's assertions concerning a lack of adequate access to the law library, the availability of a notary, and delayed mail delivery, assert no facts which show he was so hindered in his efforts to pursue a non-frivolous legal claim in federal court or state court to such a degree that he experienced adverse consequences or an actual injury from the alleged deprivation. The claim is therefore insufficient to establish an access to courts violation. *Lewis*, 518 U.S. at 349. Notably, judicial notice of court records show Wilson has timely and effectively litigated this case and several other civil cases filed in this Court. *See e.g., Wilson v. Crow*, Civil No. 2:20-cv-348-RAH-CSC (M.D. Ala. 2023), *Wilson v. Crow*, Civil Case No. 2:20-cv-353-WKW-CSC (M.D. Ala. 2023), and *Wilson v. Crow*, Civil No. 2:21-cv-557-MHT-KFP (M.D. Ala.) (pending). Also, Defendants' unrefuted evidence reflects that Easterling's law library is open Monday through Friday (except on holidays), from 7:30 a.m. to 3:30 p.m., to all inmates who request access, but review of scheduled library appointments reflects that Wilson did not submit any requests for library access. *See* Doc. No. 39-2 at 1–2; Doc. No. 39-3 at 1–2.

1.      Defendants' Special Report (Doc. No. 39) be CONSTRUED as a motion for summary judgment.

2.      Defendants' Motion for Summary Judgment (Doc. No. 39) be GRANTED on all claims.

3.      This case be DISMISSED with prejudice.

Further, it is ORDERED that by **July 25, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Resol. Tr. Corp., v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11TH CIR. R. 3-1.

DONE on this 10th day of July, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE